UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HARRIS COUNTY, TEXAS, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al. <br><br> Defendants. | Civil Action No. 25-1058 (LLA) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO**
**<u>PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION .............................................................................................................1

STATUTORY BACKGROUND ........................................................................................2

      I.     Refugee Admission ...............................................................................................2

      II.    Refugee Resettlement ...........................................................................................3

FACTUAL BACKGROUND .............................................................................................4

      I.     The Secretary's Directive .....................................................................................4

      II.    Implementation of the Directive ..........................................................................5

      III.   Plaintiff .................................................................................................................5

STANDARD OF REVIEW ...............................................................................................5

ARGUMENT .....................................................................................................................6

      I.     Plaintiff Fails to Demonstrate A Likelihood of Success on the Merits. ................6

            A.    Plaintiff Does Not Demonstrate Standing ...................................................6

            B.    Plaintiff Does Not Allege Any Final Agency Action................................7

            C.    The Secretary Has Not Acted Contrary to Law .........................................8

            D.    The Secretary's Pause Is Not Arbitrary and Capricious............................12

      II.    Plaintiff Cannot Establish a Likelihood of Immediate Irreparable Harm. ...........14

      III.   The Balance of Harms and the Public Interest Weigh Against Relief.................17

      IV.   The Court Should Not Grant Equitable Relief. ....................................................17

      V.    The Court Should Require Plaintiff to Post Security............................................19

CONCLUSION..................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*,
840 F. Supp. 2d 327 (D.D.C. 2012) ....................................................................................16

*Al-Aulaqi v. Obama*,
727 F. Supp. 2d 1 (D.D.C. 2010) ..........................................................................................7

*Amato v. Wilentz*,
952 F.2d 742 (3d Cir. 1991) ..................................................................................................7

*Aminjavaheri v. Biden*,
Civ. A. No. 21-2246 (RCL), 2021 WL 4399690 (D.D.C. Sept. 27, 2021) ...................................2

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) ..............................................................................................16

*Basel Action Network v. Mar. Admin.*,
285 F. Supp. 2d 58 (D.D.C. 2003) .........................................................................................5

*Bennett v. Spear*,
520 U.S. 154 (1997) ...............................................................................................................7

*Califano v. Yamasaki*,
442 U.S. 682 (1979) .............................................................................................................17

*Caplin & Drysdale, Ctd. v. United States*,
491 U.S. 617 (1989) ...............................................................................................................7

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ........................................................................................5, 14

*City of New Haven v. United States*,
809 F.2d 900 (D.C. Cir. 1987) ............................................................................................10

*CityFed Fin. Corp. v. Office of Thrift Superv.*,
58 F.3d 738 (D.C. Cir. 1995) ..............................................................................................14

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .............................................................................................................16

*De Beers Consol. Mines v. United States*,
325 U.S. 212 (1945) .............................................................................................................17

*Dickson v. Sec'y of Def.*,
68 F.3d 1396 (D.C. Cir. 1995) ..............................................................................................6

*Dorfmann v. Boozer*,
414 F.2d 1168 (D.C. Cir. 1969) ........................................................................................2

*Farris v. Rice*,
453 F. Supp. 2d 76 (D.D.C. 2006) ....................................................................................15

*Fed. Energy Regul. Comm'n v. Elec. Power Supply Ass'n*,
577 U.S. 260 (2016) ..........................................................................................................13

*Frizzelle v. Slater*,
11 F.3d 172 (D.C. Cir. 1997) ............................................................................................12

*Fund for Animals v. Frizzell*,
530 F.2d 982 (D.C. Cir. 1975) ..........................................................................................15

*Hall v. Johnson*,
599 F. Supp. 2d 1 (D.D.C. 2009) ........................................................................................5

*Hospitality Staffing Sols., LLC v. Reyes*,
736 F. Supp. 2d 192 (D.D.C. 2010) ....................................................................................5

*In re Microsoft Corp. Antitrust Litig*,
333 F.3d 517 (4th Cir. 2003) ............................................................................................17

*League of Women Voters of the U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ................................................................................................5

*League of Women Voters v. Newby*,
Civ. A. No. 16-236 (RJL), 2016 WL 8808743 (D.D.C. Feb. 23, 2016) ...........................15

*Maryland v. King*,
567 U.S. 1301 (2012) ........................................................................................................17

*Mdewakanton Sioux Indians of Minn.*,
255 F. Supp. 3d 48 (D.D.C. 2017) ....................................................................................14

*Miller v. Lehman*,
801 F.2d 492 (D.C. Cir. 1986) ............................................................................................6

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ..............................................................................................................6

*Newdow v. Bush*,
355 F. Supp. 2d 265 (D.D.C. 2005) ..................................................................................15

*Norton v. S. Utah Wilderness Alliance*,
542 U.S.55 (2004) ........................................................................................18

*Off. of Commc'n of United Church of Christ v. FCC*,
707 F.2d 1413 (D.C. Cir. 1983) ......................................................................13

*Pac. Radiation Oncology, Ltd. Liab. Co. v. Queen's Med. Ctr.*,
810 F.3d 631 (9th Cir. 2015) ..........................................................................17

*Palisades Gen. Hosp. v. Leavitt*,
426 F.3d 400 (D.C. Cir. 2005) ........................................................................18

*Powers v. Ohio*,
499 U.S. 400 (1991) ..........................................................................................7

*PPG Indus., Inc. v. United States*,
52 F.3d 363 (D.C. Cir. 1995) ..........................................................................18

*Pub. Citizen Health Rsch. Grp. v. Acosta*,
363 F. Supp. 3d 1 (D.D.C. 2018) ....................................................................15

*Pursuing Am.'s Greatness v. FEC*,
831 F.3d 500 (D.C. Cir. 2016) ..........................................................................5

*Sierra Club v. EPA*,
353 F.3d 976 (D.C. Cir. 2004) ........................................................................12

*Spadone v. McHugh*,
842 F. Supp. 2d 295 (D.D.C. 2012) ................................................................15

*Summers v. Earth Island*,
555 U.S. 488 (2009) ..........................................................................................6

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) ........................................................................................17

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ..........................................................................................6

**Statutes**

5 U.S.C. § 706(2)(A) ..........................................................................................6

8 U.S.C. § 1101(a)(42) ..................................................................................2, 3

8 U.S.C. § 1157(a)(2) ........................................................................................2

8 U.S.C. § 1157(c)(1) ........................................................................................2

8 U.S.C. § 1157(c)(2)(A) ................................................................................................3

8 U.S.C. § 1157(c)(3) ......................................................................................................3

8 U.S.C. § 1182(a) ...........................................................................................................2

8 U.S.C. § 1182(a)(1) .....................................................................................................16

8 U.S.C. § 1521(a) ...........................................................................................................3

8 U.S.C. § 1521(b) ...........................................................................................................3

8 U.S.C. § 1522(a)(1)(A) ..............................................................................................3, 8

8 U.S.C. § 1522(a)(1)(A)(iii) ...........................................................................................9

8 U.S.C. § 1522(c) ...........................................................................................................4

8 U.S.C. § 1522(d) ...........................................................................................................4

8 U.S.C. § 1522(e) ...........................................................................................................4

8 U.S.C. § 1522(e)(1) .......................................................................................................4

Pub. L. 117-238 ...............................................................................................................9

Pub. L. 96-212 .................................................................................................................2

**Regulations**

8 C.F.R. § 207.7(a) ...........................................................................................................3

45 C.F.R. § 75.2 ...............................................................................................................7

45 C.F.R. § 75.305(b)(1) ................................................................................................13

45 C.F.R. § 400.11(a) .......................................................................................................3

45 C.F.R. § 400.107 ..........................................................................................................4

Defendants, by and through the undersigned counsel, respectfully file this memorandum in opposition to Plaintiff's motion for temporary restraining order (ECF No 7, "Pl.'s Mot."). For the reasons discussed below, the Court should deny Plaintiff's motion.

## INTRODUCTION

On February 3, 2025, the Secretary of Health and Human Services ("Secretary") issued a directive, directing the Administration for Children and Families to pause payments to contractors, vendors, and grantees related to immigration and refugee resettlement for a program and payment integrity review ("integrity review") due to a series of reports published by a Florida grand jury regarding waste, fraud, and abuse in immigration programs.

Plaintiff Harris County, which is a sub-awardee of a grant for refuge medical services, seeks emergency relief to enjoin the Secretary from continuing the integrity review and direct the Secretary to promptly pay the grant awardee, U.S. Committee for Refugees and Immigrants (the "Committee"), so that the Committee can reimburse Plaintiff. Plaintiff's motion should be rejected wholesale.

First, Plaintiff fails to demonstrate a likelihood of success on the merits for multiple reasons: (1) Plaintiff does not demonstrate third party standing; (2) Plaintiff does not identify a final agency action; (3) the Secretary has not acted contrary to law; and (4) the Secretary's pause is not arbitrary and capricious. Second, Plaintiff fails to establish irreparable harm because its alleged harms are monetary and, thus, by definition reparable at law, and any alleged follow-on harms related to reparable funding shortfalls are speculative. And, third, the balance of harms and the public interest weigh in favor of the Secretary's ability to protect the integrity of government funding programs consistent with his constitutional and statutory authorities.

Accordingly, for the reasons discussed below, the Court should deny Plaintiff's demand for extraordinary relief, especially because Plaintiff's demand is that it be granted the requested

ultimate relief.  *See Aminjavaheri v. Biden*, Civ. A. No. 21-2246 (RCL), 2021 WL 4399690, at *5

(D.D.C. Sept. 27, 2021) ("Moreover, the D.C. Circuit has cautioned that a preliminary injunction

'should not work to give a party essentially the full relief he seeks on the merits.'" (quoting

*Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (citations omitted)).

### STATUTORY BACKGROUND

I.    <u>**Refugee Admission**</u>

The Refugee Act of 1980 amended the Immigration and Nationality Act ("INA") to

establish "a permanent and systematic procedure for the admission to this country of refugees of

special humanitarian concern to the United States, and to provide comprehensive and uniform

provisions for [their] effective resettlement." Pub. L. 96-212, 94 Stat. 102, § 101(b).  The Refugee

Act provides that the maximum number of refugees that may be admitted annually shall be "such

number as the President determines, before the beginning of the fiscal year and after appropriate

consultation [with Congress], is justified by humanitarian concerns or is otherwise in the national

interest."  8 U.S.C. § 1157(a)(2).

Subject to numerical limits set annually by the President, the Secretary of Homeland

Security has discretion to admit "any refugee who is not firmly resettled in any foreign country,

is determined to be of special humanitarian concern to the United States, and is admissible (except

as otherwise provided under [8 U.S.C. § 1157(c)(3)]) as an immigrant" under the INA.  8 U.S.C.

§ 1157(c)(1);  *see also*  8 U.S.C. §§ 1101(a)(42) (defining "refugee"), 1182(a) (general

inadmissibility grounds).  Which refugees are determined to be "of special humanitarian concern"

to the United States for the purpose of refugee resettlement is determined in the Report to

Congress on Proposed Refugee Admissions prior to the beginning of the fiscal year.  Refugees

admitted in accordance with this provision are sometimes referred to as "principal" applicants or

refugees.

In addition, certain individuals who do not meet the statutory definition of a refugee under 8 U.S.C. § 1101(a)(42) may nonetheless be entitled to refugee status if they are accompanying or "following-to-join" a principal refugee. *See* 8 U.S.C. § 1157(c)(2)(A); 8 C.F.R. § 207.7(a). To obtain "derivative refugee" status, an applicant must be the spouse or unmarried child under the age of 21 of a principal refugee and must also be admissible (except as otherwise provided under 8 U.S.C. § 1157(c)(3)) as an immigrant under the INA. 8 U.S.C. § 1157(c)(2)(A). Derivative refugees who are either in the physical company of the principal refugee when admitted to the United States or admitted within four months of the principal refugee's admission are called "accompanying" refugees. 8 C.F.R. § 207.7(a). Derivative refugees who seek admission more than four months after the principal refugee are called "following-to-join" refugees. *Id*.

## II.    <u>Refugee Resettlement</u>

Following admission, the United States, through public and private organizations, provides resettlement services. These services are administered by the Office of Refugee Resettlement in the Administration for Children and Families, which is headed by a Director. 8 U.S.C. § 1521(a). "The function of the Office and its Director is to fund and administer (directly or through arrangements with other Federal agencies), in consultation with the Secretary of State, programs" to provide resettlement services. 8 U.S.C. § 1521(b). The Director works to:

> (i) make available sufficient resources for employment training and placement in order to achieve economic self-sufficiency among refugees as quickly as possible, (ii) provide refugees with the opportunity to acquire sufficient English language training to enable them to become effectively resettled as quickly as possible, (iii) insure that cash assistance is made available to refugees in such a manner as not to discourage their economic self-sufficiency, in accordance with subsection (e)(2), and (iv) insure that women have the same opportunities as men to participate in training and instruction.

8 U.S.C. § 1522(a)(1)(A); *see also* 45 C.F.R. § 400.11(a).

In addition, the Office of Refugee Resettlement reimburses public and private organizations for the provision of medical care for refugees.  8 U.S.C. § 1522(e)(1); 45 C.F.R. Supbart G.  Included in the medical care is an initial medical screening.  45 C.F.R. § 400.107.

Accordingly, the Director of the Office of Refugee Resettlement provides various services for resettlement, e.g., cash assistance and medical services, child welfare services, and employment assistance and English language learning.  8 U.S.C. §§ 1522(c)–(e); 45 C.F.R. Part 400, Subparts E, G and I.

## FACTUAL BACKGROUND

I.    <u>**The Secretary's Directive**</u>

On February 3, 2025, the Secretary issued the "Secretarial Directive on Program and Payment Integrity" ("Directive"), which directed the pause on payments made by the Administration for Children and Families related to immigration and refugee resettlement.  Decl. of Andrew Gradison (Apr. 10, 2025) (attached hereto as Ex. A) ¶¶ 8–10, Ex. 1 (Sec'y Dir. (Feb. 3, 2025)). Responding to a series of reports published by a Florida grand jury regarding waste, fraud, and abuse in immigration programs, the Secretary determined that the Department of Health and Human Services ("Department") required a mechanism by which to assess programs related to immigration and refugee resettlement to determine whether payments were "free from fraud, abuse, and duplication," and contractual arrangements, vendor agreements, and grant awards were "in the best interests of the United States."  *Id*.  As a result, the Secretary directed:

> Agency personnel shall briefly pause all payments made by the Administration for Children and Families to contractors, vendors, and grantees related to immigration and refugee settlement for internal review for payment integrity.  Such review shall include but not be limited to a review for fraud, waste, abuse, and a review of the overall contracts and grants to determine whether those contracts or grants are in the best interest of the government and consistent with current policy priorities.

*Id*.

## II.    <u>Implementation of the Directive</u>

After receipt of the Directive, the Administration for Children and Families established a payment integrity review process, which focused on two aspects of the grants: (i) whether the grantees billed for activities that were outside the scope of the grants; and (ii) whether the grants were structured to pay for activities exceeding the requirements of the Refugee Act.  Gradison Decl. ¶¶ 8–10.

## III.    <u>Plaintiff</u>

Plaintiff is a sub-awardee of the medical services grant for the state of Texas.  Compl. (Corr.) (ECF No. 9-1) ¶ 41.  The Committee administers the medical services grant for Texas, and it reimburses Plaintiff for any requests for payment under the grant.  *Id.*

### STANDARD OF REVIEW

"A [temporary restraining order] is an extraordinary remedy and should be granted sparingly." *Basel Action Network v. Mar. Admin.*, 285 F. Supp. 2d 58, 60 (D.D.C. 2003).  A party seeking temporary restraining order must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)); *Hall v. Johnson*, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009) ("The same standard applies to both temporary restraining orders and to preliminary injunctions").  The moving party bears the burden of persuasion and must demonstrate, "by a clear showing," that the requested relief is warranted. *Hospitality Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

**ARGUMENT**

**I.    Plaintiff Fails to Demonstrate A Likelihood of Success on the Merits.**

The APA permits a reviewing court to set aside a final agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[T]he scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Under the APA standard of review, an agency's decision need not be "a model of analytical precision to survive a challenge." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995). It is sufficient if an agency's explanation of its decision contains "a rational connection between the facts found and the choices made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. In addition, "if the necessary articulation of basis for administrative action can be discerned by reference to clearly relevant sources other than a formal statement of reasons, [the court] will make the reference." *Miller v. Lehman*, 801 F.2d 492, 497 (D.C. Cir. 1986) (internal quotation marks omitted).

**A.    Plaintiff Does Not Demonstrate Standing**

The standing doctrine is an "essential and unchanging part of the case-or-controversy requirement" – given that it "serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (citations and internal quotation omitted). The party invoking federal jurisdiction bears the burden of establishing standing for each type of relief sought. *See Summers v. Earth Island*, 555 U.S. 488, 493 (2009). To establish standing, "the irreducible constitutional minimum" that a plaintiff must show is that: (i) he has suffered "an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (ii) such injury is "fairly traceable to the challenged action of the defendant"; and

6

(iii) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up).

In *Powers v. Ohio*, "the [Supreme] Court articulated three requirements that must be satisfied before a litigant may be accorded third party standing." *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 23 (D.D.C. 2010) (citing *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).

> First, he must show that he himself has suffered a concrete, redressable 'injury in fact' adequate to satisfy Article III's case-or-controversy requirement.  Second, the litigant must have 'a close relation to the third party.'  Third, there must be "some hindrance to the third party's ability to protect his or her own interests.

*Id*. (quoting *Powers*, 499 U.S. at 411).  "The first of these requirements is constitutional, while the latter two are prudential."  *Id*. (citing *Caplin & Drysdale, Ctd. v. United States*, 491 U.S. 617, 624 n.3 (1989)).  "Because third party standing is the 'exception' rather than the norm, the burden is on the plaintiff 'to establish that [he] has third party standing, not on the defendant to rebut third party standing.'"  *Id*. (quoting *Amato v. Wilentz*, 952 F.2d 742, 750 (3d Cir. 1991)).

Despite Plaintiff's assertion, it has no contract with the Department.  The Department has not awarded a grant to Plaintiff—the award is to the Committee.  *See* 45 C.F.R. § 75.2 (defining a subaward and a subrecipient).  As such, Plaintiff appears to be vindicating the rights of the Committee under its grant with the Department, and thus, must demonstrate third party standing. However, Plaintiff does not plead third party standing in its complaint.  *See generally* Compl. (Corr.) (ECF No. 9-1).

### B.      Plaintiff Does Not Allege Any Final Agency Action

Agency action must be "final" to be reviewable under the APA.  5 U.S.C. § 704.  Agency action is final only if (1) it marks "the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences flow."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

Plaintiff fails to identify any final agency action.  That's for good reason: there is *no* final agency action where, as here, the Secretary's funding pause is temporary.  Indeed, the Administration for Children and Families review of the grant is ongoing.  Gradison Decl. ¶¶ 11 12.  Moreover, the Administration has completed similar reviews and resumed funding. *See*, e.g., Jt. Status Rpt. (ECF No. 22), *Catholic Charities Diocese of Forth Worth, Inc. v. Dep't of Health and Human Servs.*, Civ. A. No. 25-0605 (LLA) (D.D.C. Mar. 17, 2025).  In other words, the agency's decisionmaking process is ongoing—not consummated—and there is no final agency action here.

As such, Plaintiff fails to allege a challenge to a final agency action.

### C.      The Secretary Has Not Acted Contrary to Law

Plaintiff asserts, "By deciding to effectively terminate the refugee resettlement programs via cutting off appropriated federal grant funds that should flow to the County, HHS flouts an express congressional mandate laid out in the Refugee Act of 1980 and subsequent legislation. HHS thus violates the separation of powers, including the Spending Clause and the Appropriations Clause."  Pl.'s Mem. (ECF No 7-1) at 10.  Plaintiff is incorrect.

1.      The Secretary's Pause of Funding Does Not Deviate From Its Statutory Authority to Administer Refugee Resettlement Services.

First, the Secretary's pause does not violate the Refugee Act.  Section 1522, which delineates the services available to refugees, does not mandate that the government enter into any specific grants, agreements, or contracts for refugee resettlement.

Moreover, Plaintiff's reliance on 8 U.S.C. § 1522(a)(1)(A) is misplaced.  Section 1522(a)(1)(A) begins, "[i]n providing assistance under this section . . ." 8 U.S.C. § 1522(a)(1)(A). Here, Congress has directed that, if the government provides "assistance under this section," the Director of the Office of Refugee Resettlement must ensure the provision of assistance adheres

to the limits outlined. The language does not confer a right on refugees, much less on Plaintiff, but, instead, places limitations on the Director. For example, section 1522(a)(1)(A)(iii) states that the Director shall "insure that cash assistance is made available to refugees in such a manner not to discourage their economic self-sufficiency[.]" 8 U.S.C. § 1522(a)(1)(A)(iii). This language clearly indicates that Congress did not intend section 1522(a) to be a rights-conferring provision, *i.e.*, a guarantee that refugees will get cash assistance. Rather, Congress used narrowing language directing the Director to ensure that the provision of cash assistance is structured in such a way that it avoids having the refugees become dependent. Regardless, the services described in section 1522(a)(1)(A) does not include medical services.

Second, the Department has not and is not violating the appropriation for refugee resettlement services. The relevant appropriation provides,

> For necessary expenses for refugee and entrant assistance activities authorized by section 414 of the Immigration and Nationality Act and section 501 of the Refugee Education Assistance Act of 1980, and for carrying out section 462 of the Homeland Security Act of 2002, section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, the Trafficking Victims Protection Act of 2000 [ ] and the Torture Victims Relief Act of 1998, $6,427,214,000, of which $6,377,459,000 shall remain available through September 30, 2025 for carrying out such sections 414, 501, 462, and 235.

Consolidated Appropriations Act, 2023, Pub. L. 117-238, 136 STAT. 4870 (Dec. 29, 2022). However, nothing in the appropriation demands that the Department award grants at all, much less to any one specific state or nonprofit. Importantly, the Administration for Children and Families has continued to make expenditures under the appropriation. *See* Gradison Decl. ¶ 11; Pls.' Mem. (ECF No. 7-1) at 5. The Department cannot be violating an appropriation when it is continuing to expend funds under it.

Moreover, Plaintiff misconstrues the agency's actions. The Department is neither "effectively terminat[ing] the refugee resettlement programs via cutting off appropriated federal

grant funds." Pl.'s Mem. (ECF No 7-1) at 10. The Directive simply orders a temporary pause to permit a program and payment integrity review. Sec'y Dir. Since it commenced the pause, the Department has worked diligently to complete its integrity review. Gradison Decl. ¶¶ 11, 12.

But in any event the Directive is far from unusual. Temporary pauses in obligations or payments of appropriations are common. *See City of New Haven v. United States*, 809 F.2d 900, 901 (D.C. Cir. 1987) (explaining that Congress has previously "acknowledged that 'the executive branch necessarily withholds funds on hundreds of occasions during the course of a fiscal year' and such delays may result from the 'normal and orderly operation of the government'" (quoting H.R. Rep. No. 658, 93d Cong., 1st Sess. 41 (1971)). The Government Accountability Office, itself an entity within the Legislative Branch, has recognized the authority for agencies to "tak[e] the steps it reasonably believes are necessary to implement a program efficiently and equitably, even if the result is that funds temporarily go unobligated." *In re Jones*, No. B-203057 L/M, 1981 WL 23385 (Comp. Gen. Sept. 15, 1981). The Directive, therefore, fits comfortably within this Executive Branch's practice of short-term delays to determine how best to implement programs consistent with the President's policy objectives and consistent with the underlying law governing the refugee resettlement program. So, the Secretary's pause did not act in excess of his authority when he temporarily paused the relevant grant payments to allow for an internal review.

        2.    <u>The Secretary's Pause Does Not Run Afoul of Other Court Orders</u>

Plaintiff asserts, "HHS's unlawful withholding of appropriated funds contravenes the orders granted by this Court and others." Pl.'s Mem. (ECF No. 7-1) at 14. Plaintiff is incorrect.

On February 25, 2025, this Court issued an order in *National Council of Nonprofits v. Office of Management and Budget*, Civ. A. No. 25-0239 (LLA) (D.D.C.), which stated in part:

    ORDERED that Defendants are enjoined from implementing, giving effect to, or reinstating under a different name the unilateral, non-individualized directives in

OMB Memorandum M-25-13 with respect to the disbursement of Federal funds under all open awards.

*Id*., Order (ECF No. 52).  Similarly, *New York, v. Trump*, Civ. A. No. 25-0039 (D.R.I.) issued an order enjoining OMB Memorandum M-25-13, *id*., Order (ECF No. 96), later clarifying "the Temporary Restraining Order ("TRO") permits the Defendants to limit access to federal funds on the basis of the applicable authorizing statutes, regulations, and terms . . . [and] does not bar both the President and much of the Federal Government from exercising their own lawful authorities to withhold funding without the prior approval of the district court," *id*., Order (ECF No. 103).

As discussed above, the Secretary's pause was based on a separate predicate—namely, findings by a Florida state grand jury—not the OMB memorandum and on existing authority.  *See supra* Factual Background §§ I, II.  Moreover, the Administration for Children and Families' implementation of the Directive was based on an individualized determination of each grant similar to the ones at issue here to assess whether payments were free from fraud, abuse, and duplication, and in the best interests of the United States.  *Id*. § II.  As such, the Secretary's pause does not fall within the scope of the orders in *National Council* or *New York*.

In addition, on February 28, 2025, *Pacito v. Trump*, Civ. A. No. 25-0255 (W.D. Wash.), the court entered the following injunction, which obviously the United States intends to obey unless or until it is disturbed through subsequent review:

> Enforcing or implementing Executive Order 14163 [which applies to USRAP] § 3(a), (b), and (c), and § 4 in its entirety;
>
> Suspending or implementing the suspension of refugee processing, decisions, and admissions;
>
> Suspending or implementing the suspension of USRAP funds, including implementing the Suspension Notices sent by the U.S. State Department to all refugee and resettlement partners on January 24, 2025;
>
> Withholding reimbursements to resettlement partners for USRAP related work performed pursuant to cooperative agreements before January 20, 2025.

11

*Id.*, Order (ECF No. 45).  While the final grant of relief may apply to the grant in question, as Plaintiff notes, the Department has reimbursed the Committee for any expenses incurred before January 20, 2025.  *See* Pls.' Mem. (ECF No. 7-1) at 7.

>    **D.    The Secretary's Pause Is Not Arbitrary and Capricious**

Plaintiff asserts, "HHS also acted arbitrarily and capriciously by *sub silentio* terminating the County's refugee resettlement programs."  Pl.'s Mem. (ECF No 7-1) at 14.  Plaintiff is again incorrect.

There is clearly a rational connection between the troubling allegations contained in the Florida state grand jury reports and the Secretary's choice to pause funding.  An agency decision must simply "contain . . . [a] rational connection between the facts found and the choice made." *Frizzelle v. Slater*, 11 F.3d 172, 176–77 (D.C. Cir. 1997) (citing *Bowman Transp.*, 419 U.S. at 286).  As noted in the Directive, a Florida grand jury identified widespread and systemic problems related to certain immigration related programs administered by the Office of Refugee Resettlement, which called into question the Department's ability to assess them.  Sec'y Dir. (ECF No. 11).  It is rational for the Secretary to implement a pause of funding—a pause carefully designed to allow the Department to complete the program and payment integrity review described in the Directive.  *See Motor Vehicle Mfrs.*, 463 U.S. at 43 (holding review is "narrow and a court is not to substitute its judgment for that of the agency."); *Sierra Club v. EPA*, 353 F.3d 976, 978 (D.C. Cir. 2004) (holding the review standard "deems the agency action presumptively valid provided the action meets a minimum rationality standard.").  Indeed, the Department is uniquely positioned to assess its controls over the disbursement of federal funds, determine the sufficiency of the controls, and to resume funding after determining there are sufficient protections against fraud and the contract or grant is in the best interest of the United States.

Moreover, the Secretary engaged in reasoned decisionmaking.  The question is whether the agency engaged in reasoned decisionmaking, not "whether a regulatory decision is the best one possible or even whether it is better than the alternatives."  *Fed. Energy Regul. Comm'n v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016).  While Plaintiff may offer an alternative, any alternative would overlook the obvious problem that resources are finite, and any funds that are disbursed are unlikely to ever be recouped and thus cannot be redirected and put to more valuable uses.  *Cf.* 2 C.F.R. § 200.346 (procedures for collecting debts).  Weighing the costs of a temporary pause in funding, versus the benefits of discovering fraud and determining whether a grant in in the best interests of the United States, is a judgment entrusted to the Executive alone— not the courts.  *Cf. Off. of Commc'n of United Church of Christ v. FCC*, 707 F.2d 1413, 1437 (D.C. Cir. 1983) ("When the Commission reaches such predictive conclusions about what would best be in the public interest, it is entitled to substantial judicial deference.").

Further, Plaintiff's reliance on 45 C.F.R. § 75.305(b)(1) is misplaced.  Pl.'s Mem. (ECF No. 7-1) at 16.  The regulation only places a limit on the amount of advance cash payments.  45 C.F.R. § 75.305(b)(1) states, "[a]dvance payments . . . must . . . be timed to be in accordance with the actual, immediate cash requirements."  Notably, the regulation states that the advance payment must be as close as is administratively feasible to the actual disbursements."  45 C.F.R. § 75.305(b)(1).  In other words, the regulation permits the government to take the action it took here—to determine whether an advance payment was free from fraud and in the best interests of the United States.  As noted in the Directive, a Florida grand jury identified widespread and systemic problems related to the programs used to administer the unaccompanied migrant children program, which called into question the Department's ability to assess them.  Sec'y Dir. As such, the Department must be provided the necessary time to review its funding related to

immigration and refugee resettlement to both protect the government fisc and ensure the expenditure of funds is in the best interests of the United States.

Lastly, Plaintiff's assertion, "HHS also failed to consider important aspects of the problem, including the harm to the County and reliance interests." Pl.'s Mem. (ECF No. 7-1) at 15, is unpersuasive. Plaintiff's reliance interests are contrary to the very objectives articulated by the Secretary in his directive—i.e., ensuring that there are sufficient protections against fraud and the contract or grant is in the best interest of the United States.

As such, the Secretary's pause was not arbitrary and capricious.

## II.   **Plaintiff Cannot Establish a Likelihood of Immediate Irreparable Harm.**

"Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minn.*, 255 F. Supp. 3d 48, 51 (D.D.C. 2017). "The basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974); *see also CityFed Fin. Corp. v. Off. of Thrift Superv.*, 58 F.3d 738, 747 (D.C. Cir. 1995). The Supreme Court's "frequently reiterated standard requires Petitioners seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "[I]f a party makes no showing of irreparable injury, the court may deny the motion without considering the other factors." *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012) (quoting *CityFed Fin.*, 58 F.3d at 747); *see also Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."). And where a party seeks to change the status quo through action rather than merely to preserve the status quo, typically the moving party must meet an even higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result." *Farris*

*v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006) (collecting authorities); *see League of Women Voters v. Newby*, Civ. A. No. 16-0236 (RJL), 2016 WL 8808743, at *1 (D.D.C. Feb. 23, 2016) ("This conclusion is bolstered by the fact that plaintiffs here seek not to maintain the status quo, but instead to restore the status quo ante, requiring this Court to proceed with the utmost caution.").

Plaintiff has failed to demonstrate irreparable harm sufficient to warrant extraordinary injunctive relief.

First, although Plaintiff characterizes the harm as damaging its ability to provide services, Plaintiff's harm is monetary. Pl.'s Mem. (ECF No 7-1) at 4–5. "Monetary injuries alone, even if they are substantial, ordinarily do not constitute irreparable harm." *Spadone v. McHugh*, 842 F. Supp. 2d 295, 301 (D.D.C. 2012) (citations omitted).

Second, Plaintiff asserts, "On March 10, 2025, USCRI sent the County a letter stating that due to delayed reimbursement of funds since January 21, 2025, USCRI is forced to suspend its refugee resettlement program services effective March 14, 2025." Pl.'s Mem. (ECF No. 7-1) at 5. However, Plaintiff cannot claim irreparable harm when it waited almost a month before seeking emergency relief. *See Pub. Citizen Health Rsch. Grp. v. Acosta*, 363 F. Supp. 3d 1, 22 (D.D.C. 2018) (finding no irreparable harm where plaintiffs waited over three months after learning that a government agency had taken the complained-of action and over six weeks after filing their complaint to seek preliminary relief); *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("An unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm."); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (denying preliminary injunctive relief and noting that a delay of forty-four days after final regulations were issued was "inexcusable"); *Air Transp.*

*Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d 327, 338 (D.D.C. 2012) ("Plaintiffs' delay in seeking relief . . . weighs against a finding of irreparable harm."). Plaintiff became aware of the purported issues raised in its complaint on March 10, 2025. Yet, Plaintiff waited until April 9, 2025, to seek relief. That delay alone should preclude Plaintiff from emergency relief.

Third, Plaintiff asserts that the pause in funding is causing irreparable harms to the public health generally and its ability to operate the clinics in the future. Pl.'s Mem. (ECF No. 7-1) at 19. But a movant cannot show "certain[] impending" injury when the asserted injury is based on a "speculative chain of possibilities," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), or on "speculation about the decisions of independent actors," *id*. at 414. As the D.C. Circuit has cautioned: "Because of the generally contingent nature of predictions of future third-party action," a court should be "sparing in crediting claims of anticipated injury by market actors and other parties alike." *Arpaio v. Obama*, 797 F.3d 11, 23 (D.C. Cir. 2015).

Moreover, Plaintiff overlooks that the individuals provided medical services have been medically screened prior to admission into the United States. The Centers for Disease Control and Prevention is responsible for ensuring that refugees entering the United States via the USRAP do not pose a threat to the public health of the country. 42 U.S.C. § 252; 42 C.F.R. § 34. In addition, prior to entry, a medical examination is required to determine if the alien has a medical condition that renders him or her inadmissible to the United States. *See* 8 U.S.C. § 1182(a)(1).

Further, Plaintiff offers no evidence that a brief purported shortfall of about $1.25 million in its budget, which was reported to be $2.67 billion in Fiscal Year 2025, is going to cause irreparable harm.

As such, the Court should find that Plaintiff has not established irreparable harm.

III.    **The Balance of Harms and the Public Interest Weigh Against Relief.**

The party seeking a preliminary injunction must show that the balance of equities tips in their favor and that the injunction is in the public interest. *Winter*, 555 U.S. at 20. A court "'should pay particular regard for the public consequences'" of injunctive relief. *Id*. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

An injunction here would effectively disable the Secretary from assessing both program and payment integrity consistent with his constitutional and statutory authorities. "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (cleaned up). And where the Government is legally entitled to make decisions about the disbursement or allocation of federal funds but is nonetheless ordered to release the funds, such funds may not be retrievable afterwards. Indeed, Plaintiff demands that this Court direct payment of approximately $36 million "within 3 business days" of any order. Pr. Order (ECF No 7-3) at 2. Those harms will irreparably harm the sovereign and pecuniary interests of the United States.

Thus, the balance of the equities weighs in favor of Defendants and relief should be denied.

IV.    **The Court Should Not Grant Equitable Relief.**

It is a bedrock principle of equity that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Additionally, "'preliminary relief may never be granted that addresses matters 'which in no circumstances can be dealt with in any final injunction that may be entered.'" *In re Microsoft Corp. Antitrust Litig*, 333 F.3d 517, 525 (4th Cir. 2003) (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). Therefore, the scope of equitable relief

available here should be constrained by what would be available to Plaintiffs at final judgment under the APA. *See Pac. Radiation Oncology, Ltd. Liab. Co. v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (preliminary relief must be "of the same nature as that to be finally granted.").

Relief under the APA is limited; courts may "hold unlawful and set aside agency action." 5 U.S.C. § 706; *see also Norton v. S. Utah Wilderness All.*, 542 U.S.55, 66–67 (2004) (explaining how the APA's limits on relief are intended to "protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements"). The APA generally prohibits "specific relief," in the sense that, "when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards." *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) (citations omitted); *see also Palisades Gen. Hosp. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005). As such, if the Court is included to grant Plaintiff's motion, it must do so consistent with the APA.

Plaintiff's requested relief exceeds these bounds. If granted, Plaintiff's relief would bind the Department to have to pay requests regardless of whether the Department deemed the request proper under the terms of the award of the grant and would restrict the Department from taking any future actions to protect the public fisc or to ensure the expenditure of funds is in the best interests of the United States. *See* Prop. Order (ECF No 7-3) at 1–2 (seeking to enjoin "are enjoined from implementing, enforcing, or otherwise giving effect to any rule, order, or other agency action suspending, freezing, pausing, withholding, cancelling or otherwise preventing the obligation or disbursement of appropriated federal grant funds in connection with the refugee resettlement program, which should flow to Plaintiff and otherwise effectively result in the cancellation of the programs."). Moreover, Plaintiff's relief would unduly restrict the

Department's ability to review the pending requests to ensure they are proper under the terms of the award and to process other pending requests for the disbursement of fund the Department may deem to be more urgent than Plaintiff's requests. *Id.* at 2(seeking an order "that Defendants . . . remit[] payment . . . within 3 business days of the date of this order.").

Accordingly, any relief should be narrow and must account for the Department's priorities and leave intact the Executive Branch's discretion to engage in further consideration of the topic at hand and implement new policies consistent with law

## V.    **The Court Should Require Plaintiff to Post Security.**

Federal Rule of Civil Procedure 65(c) states, "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). To the extent that the Court grants relief to Plaintiff, Defendants respectfully request that the Court require Plaintiff to post security for any taxpayer funds distributed during the pendency of the Court's Order. This case is ultimately about money, and thus, the requirements of Rule 65(c) to post security are plainly at play.

\*       \*       \*

**CONCLUSION**

For the reasons stated above, Defendants respectfully request that the Court deny Plaintiff's motion for emergency relief.

Dated:  April 10, 2025
       Washington, DC

                                      Respectfully submitted,

                                      EDWARD R. MARTIN, JR., D.C. Bar #481866
                                      United States Attorney

                                      BRIAN P. HUDAK
                                      Chief, Civil Division

                                        By:_____/s/ *Joseph F. Carilli, Jr.*_____
                                          JOSEPH F. CARILLI, JR.
                                          Assistant United States Attorney
                                        601 D Street, NW
                                        Washington, DC 20530
                                        (202) 252-2525

                                      *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HARRIS COUNTY, TEXAS,

            Plaintiff,

      v.

DEPARTMENT OF HEALTH AND
HUMAN SERVICES, et al.

            Defendants.

Civil Action No. 25-1058 (LLA)

## [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiff's motion for temporary restraining order, and the

entire record herein, it is hereby

ORDERED that Plaintiff's motion is DENIED.


SO ORDERED:


_____                    _____
Date                                       LOREN L. ALIKHAN
                                           United States District Judge